The United States Court of Appeals for the Federal Circuit is now open for discussion. God save the United States and the Honorable Court. Please be seated. Good morning, ladies and gentlemen. We have six cases on our calendar this morning. Three veterans' cases, one from the District Court and a couple from the Court of Appeals for Veterans' Claims. A case from the Claims Court, a copyright case, a patent case from the District Court, and a government employee case. That case and one of the veterans' cases are being submitted on the briefs and therefore will not be argued. The first case is Gerard Chamness v. The Navy, 2012-15-47. Mr. Sheldon. Good morning, and may it please the Court. My name is David Patrick Sheldon, along with Brian Schenk. We represent Staff Sergeant Chamness. We have reserved five minutes of our time for rebuttal. At bottom, this is what this case comes down to. Was Staff Sergeant Chamness among the best qualified to be retained in the service? The person who knew him best, the person who knew him best, his commanding officer, had this to say on that decision. Staff Sergeant Chamness was one of the most knowledgeable soldiers in the supply area. Mr. Sheldon, why doesn't the statute of limitations apply to this case, or at least part of it, in the District Court? It does. It does apply to part of it. But the District Court did not decide on that ground. No, it decided on the equitable relief grounds under the APA. To the extent that there are Little Tucker Act claims that are barred, it's a mixed case, and the Court can address the merits of the equitable claim. But it was the Little Tucker Act back pay claim that you now conceded that was the basis for the transfer to our Court, was it not? The central part of this case is a procedural violation. It is not a back pay case. That is why Staff Sergeant Chamness waived any recovery in advance of $10,000. That is why the District Court didn't address it, certainly if the United States didn't raise the issue. But to the extent, Your Honor, that the Little Tucker Claim Act does not apply to you, it's a back claim, is barred, that is of no moment to the overall jurisdiction of this Court. And this Court can and does routinely address those types of issues. Let me ask you, when you talk about the equities, didn't the National Guard Bureau or the Illinois National Guard offer him everything he was asking for, and he declined it? No, Your Honor. What they offered him was to be able to come back on active duty, and what Staff Sergeant Chamness wanted, and what is required under the law, is make whole relief. What should have happened was to determine whether or not the QRB, absent the material error, would have retained him. If he had come back on active duty when he was offered that, would he have been given the back pay for the interim and everything? Well, certainly he waived $10,000 of it, I suppose. But I was in court. Would the military give him his back pay for that period? That's an interesting question. It's a good question. I don't know the answer to it from that standpoint. But I would have thought they would have considered that, that he would have considered that, or you or whoever was representing him. That's not entirely clear, Your Honor. I mean, certainly what he asked for was constructive three years' credit for retirement, and that is what he was entitled to. And that's what he presumably would have gotten. Not necessarily. I think what was offered by the National Guard, the Illinois National Guard, was for him to come back on active duty. It was not offered within any statement by the National Guard that he was to receive back pay or time and credit. And in fact, that's what Staff Sergeant Chamness wanted. So he wanted to be able to get the years' credit toward retirement without actually being on duty and satisfying the physical fitness requirements. Well, and certainly, Your Honor, from the perspective of whether or not… The answer to that question is yes. But what he was entitled to under the QRP was when there was material error. When the National Guard figured out that there was material error in this record. And the lawyer for the National Guard of the United States certainly lays out at A337 and 338, 339, what the material errors are. And he said, well, that it should have been submitted, resubmitted to the QRP. And if that would have been done in a timely manner, which is… And it's important to note that Staff Sergeant Chamness asked the Illinois National Guard initially upon complaint to the IG to have a reconsideration package as was required under paragraph 4-16-A-4 of AR-135-205. That's what the regulation provided for. It's not Chamness's fault that the Army and the National Guard of Illinois did not follow Army regulations. And that's why this case is procedural in nature. That's why the court can and should remand this case to the district court. Because at the end of the day, there was material error in the record. Staff Sergeant, as his commanding officer stated, he stands out amongst his peers as one of the best supply sergeants in the Illinois National Guard. And I recommend him for retention. Those are his words. But the most you could get for relief, as I understand it, would be that we would send it back for purposes of determining whether it would be appropriate to order that his records be corrected. Right? But even upon that correction, there's no guarantee that any benefit would flow from that. Isn't that right? In terms of being able to predict absent the error, the material error, whether or not the QRB, yes. And I think that the question is whether that then is justiciable or not. That, the United States raises a good point on. But not whether or not there's a procedural error. And it may be that we go back to the QRB, and certainly there's special selection boards that this court is aware of, where they reformulate, recalculate, take that material error out, and have it determined. Then it's a question of what the remedy is that's going to be afforded or not. But for the court, certainly at this point, the decision is to remand the case for the proper procedural steps to be taken as required under the Army regulations. Right. Well, even if it was true that there were these errors in the record, if it were true that there were, you know, ten times those errors in the record, as long as there are legitimate, non-erroneous references in the record to him failing his physical fitness requirements or not living up otherwise to the total standards that might be required of someone who is the most qualified to be retained, wouldn't he still end up in the same place? No. No, Your Honor. And that's not just my opinion. That's the lawyer for the National Guard of the United States' opinion. Because he states, number one, it's not established that he's in any way, shape, or form mediocre. In fact, quite the contrary, all of his NCOERs, all of his ratings were high. Now, does that make him the best qualified? Well, consider that of the 38 staff sergeants that were considered by the QRB, only four, only four, including Chambliss, were not selected to be retained. Ninety percent were. All of this evidence was totally ignored by the BCMR. They don't even address the advisory opinion from the lawyer from the National Guard of the United States. Not only that, this report repeats the same error. Beyond that… Did any of those 90% also fail the physical fitness requirements? We don't know. It's not a matter of record. But what we do know is that the only evidence that was negative, that was adverse on this record, was Staff Sergeant Chambliss' incorrect and material in-air reports of the APFT, repeatedly throughout this. And it's not simply just this aspect of it. But his fitness reports were uneven as well. You have quoted his latest commander about how great he was as a Sergeant, as a Supply Sergeant, but they were, it was not the most stellar of records. Well, I would suggest, Your Honor, that his overall potential for promotion and or service, that in fact, he was among the best. He's rated among the best three times. He's rated fully capable ten times. He was never rated as marginal. All of this is very positive. None of this is addressed in the decision of the BCMR or the district court. But in any event, we owe deference to the board, don't we? Certainly, Your Honor. And the board's findings were that there were flaws, and he was not among the best. Well, Your Honor, and that's not supported by the record. And that's why it's arbitrary. That's why it's capricious. And that's why it's contrary to law. It is not based upon the substantial evidence before the war, the board or the court. I see my time is up. If I may finish. Please finish. It's your time. At the end of the day, it's simply not my opinion. It's not just the opinion of the lawyer of the United States for the National Guard. It is the matter of record. What is in the record? And if you examine that critically, it is impossible to say that the QRB should not have been provided an opportunity to consider as required under 4-9A of AR 135. Bottom line is, his record was good. 90% of the soldiers were retained at that QRB. He had errors in his record that were material. That's what the evidence of record supports throughout. Absent those errors, his record is good. Is it the absolute best? Is he the above-the-pack soldier, the walk-on leather sailor? Probably not. But would he be retained? I submit to the court that he would have been. Thank you. We'll save the rest of your time for rebuttal, Ms. Sheldon. Thank you, Your Honor. Mr. Bickel. Mr. Sheldon, may it please the court. At bottom, this case is a military pay case for seeking back pay and restoration of the Illinois National Guard. There's no dispute in plaintiff-conceived that this is a part of a Tucker Act case. We think it's not only in part but in whole a Tucker Act case, and one that this appeal was proper before this court, but also that the trial court erred by not dismissing for lack of jurisdiction. It is truly unfortunate that the government didn't raise this at the time, so at that time maybe the plaintiff could have incurred that defect. Yeah, but it wouldn't even be here, would we? He would have stayed in the D.C. I'm not necessarily sure if that's accurate, Your Honor, only because I think the court's jurisprudence in this court as well as in the D.C. Circuit and all other circuits is that a court will look beyond the bare allegations of a complaint to determine what is at bottom the plaintiff is really seeking. And in this case, even though he's making an argument that there was a procedural error, the claim is for restoration back into the Illinois National Guard with restoration of benefits. So that is a pay claim at bottom, and there's no way you can get away with it. But doesn't he have a separate claim that he just wants his military record to be accurate regardless of where the chips might fall after that? That might have been an APA claim, one that wasn't pledged and one that wasn't pursued directly at the BCMR. His specific request was there was a material error, I should have had a relook by the QRB, and I did not get one. And if I had gotten one, I would have been retained in back pay. But you can't just separate in piecemeal saying I want an APA claim, and then if the money would automatically flow, then in court that would be a Tucker Act claim. But he did not raise that claim. I think if there was a standalone separate claim, for instance, I should have received a good conduct medal, and if I had that in my records, maybe there's something different. Maybe that good conduct medal piece standing alone could be maintained in district court, because that wouldn't read the money if in fact the record changed. But that's not the case here. Do you think we ought to vacate the decision and remand with instructions to dismiss it? Or do you think we ought to affirm? That's a more difficult question. In one case, the court reviews judgments, and we're not expanding the scope of the judgment here, so you could affirm the dismissal, which was upon. Though there is a decision, and we even cited one in our brief, I think, that says that the action of the court should be to vacate the decision and remand back in order to dismiss. But we do believe that the statute of limitation bars this claim, and we disagree with plaintiff's argument that the court, even though the Tucker Act claim could be dismissed for jurisdictional grounds, that somehow the court can continue to review an EPA claim. Plaintiff appellant cites, or Sergeant Chalmers cites the Bray case, but our reading, we've read Bray, and we just don't believe that Bray holds what the plaintiff is citing him for. In fact, if anything, Bray is, let's say, criticizing the government for typing these whipsaws and not raising these claims below. It's kind of like history is repeating itself in this case. We also think that the matter is non-justiciable, primarily as to what is material. Now, material there arguably could be a legal question, which courts address all the time. But in this case, the materiality really goes to who is the best qualified non-commissioned officer for retention past 20 in the state of Illinois. And in that case, while Staff Sergeant Chalmers' counsel and his commander, and maybe one lawyer for the National Guard, thought that he was best qualified and would have been retained, we also know that the IG for the state of Illinois National Guard, we know that the Board for Correctional Military Records, as well as we know that a follow-on National Guard opinion determined that that might not be the case, and that it wasn't material. And as Your Honor pointed out, there is a lot of evidence in that record that, even assuming those errors, it could be determined that he wasn't the best qualified. So the record does support the BCMR's decision, as well as the trial court's decision, that determined that BCMR was not arbitrating the person's net finding. I'm going to go back to where you were, because I don't understand why you could have a stand-alone claim to correct your military records if what you wanted is a good conduct medal on your military record. But you can't have a stand-alone claim to correct misstatements regarding problems within the institution. I'm sorry, I didn't speak clearly, I didn't complete my thought, I apologize, Your Honor. That individual claim saying that OER should be stricken from the record standing alone might be okay. But when you say, I want that record corrected with restoration on active duty and back pay, that becomes a back pay claim. There are separate claims. There are claims that you can make under the APA for a correction of your military record. And in fact, in this case, there was a recommendation that the record should have been corrected, and it was ignored. Correct? No, I don't believe that the Adjutant General for the State of Illinois decided to submit his records to the board. And I don't know why that's not in the record. Why? It could be for equitable reasons, because one thing, according to the regulation, pursuant to paragraph 4-7 of the Regulation 135-205, one of the soldier's responsibilities, Staff Sergeant Chaumet's responsibility, is to actually review his personnel records before they go to the board. And in fact, he was given an opportunity in December of 2002 to actually review not only the summary sheet that goes before the board, where, you know, set forth his career, he also was allowed to respond to the board. And he noted to the board that, I've had problems with my fitness and my weight, and I'm on a profile, and I hope to overcome those. So those problems in the record were certainly identified to the board. And Staff Sergeant Chaumet did not, at the time when he had the opportunity to correct the record, he did not take that opportunity. So now you're saying that even if there is a stand-alone claim to correct the record, we should deny that for what? For because he didn't take an opportunity to fix it sooner? Well, I don't know if the claim in the complaint is pled stand-alone, but let's assume it is. Assuming it is, I don't believe that this court can review that matter if it's outside the Tupper Act's jurisdiction. I don't believe it's within this court's ability to do that. I've not been able to find a case that says if the claim is deemed untimely pursuant to the Tucker Act, and I think the Mitchell case, which we said in our brief… But we're not limited to the Tucker Act jurisdiction. Once the case is transferred out based on the Tucker Act, we then have jurisdiction over the entire matter, correct? So we don't split what goes to which court of appeals. Once there is something that's within our exclusive jurisdiction, everything comes to us and we can resolve everything. Are you saying that because the statute of limitations ran, there wasn't properly a little Tucker Act claim, and therefore there can't be a pendant claim that we otherwise would not have jurisdiction over? If that was the analysis that was in Mitchell, then that certainly would support it, because I do think that any claim that was tied and brought under that Tucker Act jurisdictional basis could not be before the court. It would fall with the Tucker Act's claim. Yes, and that's exactly… I mean, Mitchell made that argument, and the court rejected it in Mitchell. But didn't the Supreme Court specifically tell us that to avoid ping-ponging, that once the case is transferred, even if the underlying basis for the transfer was erroneous or falls away, the receiving court of appeals is still supposed to exercise jurisdiction? And we are not arguing that the court shouldn't exercise jurisdiction. It's just that it can't entertain the claim because the jurisdiction for that claim is no longer viable because it was outside the six-year statute of limitations. Okay. I guess I'm sorry. You're right that the Tucker Act claim, if it's barred by the statute of limitations, we don't decide it. But that does not mean his APA claim falls and wouldn't exist if it's independently fled. We would still retain jurisdiction over that. So the problem is you're making this far more complicated than I think it needs to be. We have jurisdiction over these issues, and the mere fact that he might have independent claims, and he ultimately hopes that in the end of the day he gets money or he gets reinstatement, doesn't mean that he can't assert an independent claim to correct his military record. And we're not saying he can't. We're just saying that right now that claim is not proper before the court because it's barred by the statute of limitations. And I don't believe he's made that claim below. I don't believe there's a specific records correction claim below. It is for restoration and backbite. That's the relief that he's seeking. Or else we would always have these split cases and Tucker Act cases because they almost always are inevitably based on a records correction. So any time there's a statute of limitations, we'd be doing exactly what the Supreme Court says not to do. We'd be splitting claims. And, in fact, when they made this court the uniform court for appeals of Little Tucker Act and Big Tucker Act cases, they did it to avoid having to ensure we did have a uniform basis of law, not to have, okay, for all your backdate claims that are based on an incorrect record, those might be barred, but nonetheless you can still raise another record claim in district court. In your view, what is the difference between what he asked for in his lawsuit and what the National Guard offered him? I believe what he wanted is what Judge Milo stated, and that is that he wanted to have restoration with constructive credit without having to serve. And I believe that the National Guard- Without having to serve. So is that the only difference? Without having to- Yes. He wanted the back pay and the time, but he did not want to come back? That's my understanding. Well, and I think there's a couple things. And this is speculation because it's really not in the record. But we do know one thing, that prior to going to the QRB, every soldier before the QRB has to elect that if you are not retained, should we be separated or discharged with separation pay, or would you like to remain in the reserve or the Army and go into an IRR status? That document is not in the record as to what his election was, but we do know he was discharged and received separation pay. Because if there was, and I think we mentioned this in the footnote, if there was a desire to serve and continue to move forward in the reserve and maybe try to find another unit where he could get activated and work towards a 20-year full retirement versus a gray area reserve retirement, he could have stayed in the individual ready reserve and found a unit. And certainly back in this time frame, 2002, 2003, 2004, 2005, 2006 to the present, I think we can all say that the reserve component of the United States Army and the United States Air Force is being called up to serve on active duty. And so there was opportunities there. But he didn't elect. He wanted to stay in the Illinois National Guard. And the tag, the Adjutant General for the Illinois State of Illinois said, we'll have you back in the unit. We think that there was an error, but before you come back, you've got to pass a PT test, and you've got to be underweight, and you've got to meet the retention qualifications. And that's exactly what happened there. I don't know if the Illinois National Guard would have provided the back pay. I'm not sure that – I think it might have had to come out of the state funding, and I don't know if that was the case because I think the federal funding is required. You have to actually serve. So I don't want to speculate on that. But I do know that I think that was the criteria. And I apologize if I didn't answer your question. That's okay. So subject to your questions, we'd ask that you affirm the judgment of the court. Thank you, Mr. Nichol. I finally landed on that one. Mr. Sheldon, you've got some rebuttal time. Thank you. First and foremost, one addresses the issue that somehow Shamliss is at fault for not correcting the material errors in his record. That's not required under 4-16-A-4. What is required is that the QRB consider a record with absent any material error. It doesn't say, well, if Shamliss is kind of responsible for the error, then you don't have to reconsider. It says that you have to reconsider if there's material error in the record. Did he assert a separate stand-alone complaint for a correction of his record? Yes, Your Honor. Yes? You say there's a separate count in the complaint? Yes, I believe that there is. And certainly what he asked for was under the APA for a determination that the BCMR's decision was arbitrary and capricious and not based upon substantial evidence. Does he have a separate interest in having his record corrected that is not tied to his desire for back pay? Certainly, Your Honor. He has an interest in being considered fairly by the QRB. And that independence, absent those material errors, would have led him to be retained. Now, the United States, respectfully, said, well, there's a lot of evidence. There's just a lot of evidence. But he didn't say what that evidence was. And if you look at his NCOERs, if you look at the recommendations of this commander, if you look at all of that, it leads to the conclusion that he would have been in that 90 percentile of the individuals who were selected to be retained, who were the best qualified to be retained. That's what his commanding officer determined. And that's what he recommended. And that's what the QRB would have absent those material errors in his record regarding his PFP. Finally, on the matter of jurisdiction, I believe that certainly this court handles many different split cases, good and bad claims. At the end of the day, this is an APA case. It was below. The court didn't cite Little Tucker Act jurisdiction. Notwithstanding the fact that we have conceded that that claim is barred for the purposes of the court, certainly Staff Sergeant Chambliss had waived any right to back pay in excess of $10,000. Would it have been any different if he would have waived all back pay allowances? I submit to the court not, because at the end of the day, this case is about the APA. And at the end of the day, those regulations have the force and effect of law. And the Illinois National Guard violated that law. The QRB violated that law. There is no evidence to support the conclusion that his record was somehow mediocre. In fact, quite the contrary, his record was very, very good. And he would have been found to fit within the 90 percentile who were retained by the QRB. Thank you, Mr. Sheldon. We'll take the case under advisement.